MILFORD FULLER v. STATE OF ARKANSAS

5-5382                                    437 S.W. 2d 780

Opinion Delivered February 17, 1969

*Moore & Brockman* for appellant.

*Joe Purcell*, Atty. Gen. and *Don Langston*, Asst. Atty Gen. for appellee.

CARLETON HARRIS, Chief Justice.    Milford Fuller was convicted in Boone Circuit Court of the crime of receiving stolen property.    A jury found appellant guilty, and the court entered judgment, assessing punishment of not less than 16, nor more than 48, months in the Arkansas Department of Corrections.    From the judgment so entered, comes this appeal.    Six points are raised in urging a reversal, and we proceed to discuss these contentions.

On September 7, 1967, Mickey Owen, Sheriff of Greene County, Missouri, together with several deputies, went to the office of the Municipal Judge at Harrison, and Owen executed an affidavit for a search warrant, based solely on information obtained from an unnamed confidential informant.    A warrant was issued to search a certain dwelling house and outbuildings located on a farm northwest of Harrison.    These officers, accompanied by Arkansas officers, went to that location, made a search, and seized a quantity of clothing allegedly stolen from a men's apparel store in Springfield, Missouri.    The officers then returned to the Municipal Judge, reported the results of the first search, and, based up this and the same information used in obtaining the first warrant, executed another affidavit, and obtained another search warrant to search a warehouse owned by the Golden Rich Distributing Company, located in Harrison.    There, too, a quantity of merchandise consisting of television sets, tires, and other merchandise was seized; the president of the company, Leo Walton, who resided in an apartment in the upper story

of the building, mentioned that Fuller had some connection with the merchandise, and appellant was asked to come to the warehouse. Fuller and Walton later requested to go to the office of the Prosecuting Attorney for the purpose of making statements concerning the alleged stolen property. Walton gave a statement on September 7, and Fuller made a statement on the morning of September 8, 1967. Thereafter, a number of charges were filed against Walton and appellant, both for receiving, and for possessing, stolen property. In *Walton and Fuller* v. *State*, 245 Ark. 84, 431 S.W. 2d 462, this court reversed a conviction of both men on a charge of possessing a Zenith color television set and a Zenith stereo record player, alleged to have been stolen from Chuck Carter, proprietor of an appliance company of Seymour, Missouri. The present charge against Fuller relates to suits of clothing that were allegedly stolen from a clothing store in Springfield.

The first point for reversal is the same that was raised in *Walton and Fuller* v. *State, Supra, i.e.,* that the affidavit for the search warrant was defective, and the warrant issued thereon was therefore invalid. This point controlled our decision in that case.

The alleged stolen goods which Fuller is accused of knowingly receiving, were found following the issuance of the first search warrant, while the principal warrant discussed in *Walton and Fuller* was the second warrant; however, we there held both search warrants invalid. We did hold that the television set and record player (the property involved in the earlier appeal) could be offered in evidence, and testimony taken relative thereto, because these items were voluntarily mentioned by Walton, and were not included in the property discovered under the authority of the search warrants.

The state argues that Fuller had no standing to object to the search of the farmhouse, because he had no proprietary interest, and since that property was owned

by Golden Rich, Walton, and one Ed Willis, Fuller could make no complaint that the search was invalid. This is an erroneous argument. The record reflects that Fuller had permission to be on the premises, had bird hunted there frequently, had brought bones and food to feed Willis' dog on several occasions, and had been there frequently with permission, when Willis was not there. Willis arrived on an occasion when clothes were being stored, and the witness said that the clothes were brought there by two men that he did not know; that Fuller arrived as these men were leaving. He did not see Fuller converse with the two, and he said that the only reference Fuller made to the clothes was telling Willis that the men would get them out in a few days. The witness said that he was "raised" with the Fuller family, and had been told that he was Fuller's godfather. Under *Jones* v. *United States*, 362 U.S. 257, Fuller had a sufficient interest in the property to move to suppress the evidence. In *Jones,* the United States Supreme Court held that the testimony reflected a sufficient interest in the premises to establish that appellant was a person aggrieved by the search. Quoting from the opinion:

> "That testimony established that at the time of the search petitioner was present in the apartment with the permission of Evans, whose apartment it was. The Government asserts that such an interest is insufficient to give standing. The Government does not contend that only ownership of the premises may confer standing. It would draw distinctions among various classes of possessors, deeming some, such as 'guests' and 'invitees' with only the 'use' of the premises, to have too 'tenuous' an interest although concededly having 'some measure of control' through their 'temporary presence,' while conceding that others, who in a 'realistic sense, have dominion of the apartment' or who are 'domiciled' there, have standing. Petitioner, it is insisted, by his own testimony falls in the former class."

The court then said:

"Distinctions such as those between 'Lessee,' 'Licensee,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards.

"* * * A fortiori we ought not to bow to them in the fair administration of the criminal law. To do so would not comport with our justly proud claim of the procedural protections accorded to those charged with crime. No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated."

See also *Simmons* v. *United States*, 390 U. S. 377.

The state attempts to make a distinction between the crimes of "possessing" stolen merchandise, and "receiving" stolen merchandise. We find no merit in this argument. One of the essential elements of the crime here charged is the "receiving," *i.e.*, a defendant must have possession or control over the alleged stolen goods, of which he has knowingly taken charge. As stated in 76 C.J.S. *Receiving Stolen Goods*, § 6(b), physical possession is not necessary, but constructive possession or control is sufficient. In charging Fuller with the offense, the state was certainly charging that he had control or dominion over the stolen goods. The position

of the state, as pointed out in appellant's reply brief, is a little inconsistent. Appellant states:

"* * * Thus it can be readily seen that the Appellee is both 'trying to have its cake and eat it too' in that it is attempting to establish a vital element of the crime of receiving stolen goods by showing the possession and control of the appellant of the goods at the farmhouse, the scene of the first search and seizure, and at the same time attempting to deny the Appellant having any possession or control of the same in an attempt to establish a lack of standing to object to the illegal search and seizure."

We hold that appellant was entitled to move to suppress the evidence obtained by the first search warrant, and since we have already held in *Walton and Fuller* v. *State, supra,* that that search warrant was invalid, it follows that error was committed in permitting testimony to be offered concerning the merchandise found at the farm house. In *Walton and Fuller* this court commented:

"However, neither the items discovered as a result of the two searches (except for those items not the object of the search, about which Walton voluntarily informed the officers) nor testimony relating thereto was admissible in evidence. Thus, identification of property which was inadmissible should have been excluded by the trial court as 'fruit of the poisonous tree,' even though it was offered only for the purpose of showing intent and a course of conduct."

It follows that the conviction must be reversed.

It is next asserted that the court erred in admitting Fuller's statement of February 8, 1967. In *Walton and Fuller* we found that the evidence supported the trial judge's finding that the warnings required by *Miranda*

v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, had been given, and that statements by Fuller and Walton were voluntary and made under waiver of the rights enumerated in *Miranda*. However, that holding (statements were voluntary) does not permit the introduction of the statement in the case before us, for we said:

> "* * * Furthermore, statements of both Walton and Fuller made in the prosecuting attorney's office, except for those portions relating particularly to property not listed in the second search warrant about which Walton volunteered information, were inadmissible as 'fruit of the poisonous tree.'"

The charge in the older case related to property located without the use of a search warrant—but here, the property which Fuller is accused of receiving, with knowledge that it had been stolen and with the intent to deprive the true owner thereof, is property which was recovered by the use of the invalid search warrant.

It follows, therefore, that the statement, as it relates to the suits of clothes, cannot be used in a trial of this appellant.

Appellant asserts that error was committed in denying his motion for production of the name of the informant, but since we are holding that any testimony relative to goods found under the search, or any statements made by appellant with regard to the property found during the search, cannot be used, there is no necessity to discuss this contention.

It is asserted that error was committed in permitting three men's suits to be introduced into evidence, and since these suits were found during the illegal search, the point is well taken.

A color television set, alleged to have been stolen, and received by Fuller, was exhibited to the jury by the

state, the purpose being to show that appellant was receiving other stolen property from the same people, and it is asserted that this was error. Of course, appellant being charged in this case only with receiving stolen clothing, it was not proper to introduce other allegedly stolen items. However, the court subsequently held this inadmissible, and so advised the jury.

Complaint is made that the Prosecuting Attorney commented during his closing argument on the fact that appellant did not take the witness stand, and it is alleged that this comment constituted prejudicial error. It is no longer necessary to discuss this assertion at length, because of the other errors, but we hold that the contention is without merit. *Hammond and Evans* v. *State,* 244 Ark. 1113, 428 S.W. 2d 639.

Because of the errors, heretofore set out, the judgment is reversed.

It is so ordered.