Lee Odith WICKLINE, Petitioner,

v.

A. E. SLAYTON, Jr., Superintendent of the Virginia State Penitentiary, Respondent.

Civ. A. No. 326-70-R.

United States District Court, E. D. Virginia, Richmond Division.

March 13, 1973.

Carl F. Bowmer, Richmond, Va., for petitioner.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

Lee Odith Wickline brings this petition for habeas corpus seeking to attack three convictions for statutory burglary in the Hustings Court of the City of Richmond. Petitioner exhausted his state court remedies and brought this petition claiming, *inter alia,* the ineffective assistance of his counsel. All other grounds for relief were previously denied without a hearing by order dated May 3, 1971. A plenary hearing was held on the issue of ineffective assistance of counsel and we now deny the petition *in toto.*

On March 2, 1967, the King's Department Store in the City of Richmond was burglarized. Based on an informant's tip the police secured a warrant to search the home of Wickline's brother-in-law on March 3, 1967. The search warrant was issued upon an affidavit made by the detective in charge listing "information from reliable informer" and "investigation" as the sole material facts constituting probable cause. Armed with the search warrant the police went to the home in question that evening, knocked, and presented the warrant to the brother-in-law. At this point Wickline ran for the back door where he was apprehended by the police who had entered the home in pursuit. The police searched the home and then questioned the brother-in-law in a bedroom for approximately one hour. During this time a statement was given implicating the petitioner in the King's burglary and he handed over the stolen merchandise. Wickline was then given his *Miranda* warnings and asked if he wished to make a statement. He declined and requested to see a lawyer. When the police then arrested both Wickline and his brother-in-law, the petitioner protested his brother-in-law's innocence and wanted to make a confession. The police refused to interrogate him or take any statement, whereupon Wickline said that he wanted to confess to approximately twenty recent burglaries that had taken place in and around the Richmond area. The police again repeated his *Miranda* warnings and took the confessions. Wickline was then taken to several of the locations he had supposedly burglarized and he told the police how he had broken into each place and what he had taken. The present petition for habeas corpus grows out of three of the many burglaries confessed to by the petitioner.

Wickline argues that it is clear under the "fruit of the poisonous tree" doctrine that his confession was derived from the illegal search and, therefore, would have been inadmissible against him in a court of law. He further alleges that his attorney was ineffective in failing to investigate the circumstances leading to the confession and to advise him of the consequences. Petitioner must establish that the confession was inadmissible regardless of the conduct of his attorney. "A prisoner is entitled to effective representation, but the fact that something which might have been done was not done, in the absence of a showing of any harmful consequences, is not enough to warrant overturning convictions on petitions for habeas corpus." Horne v. Peyton, 356 F. 2d 631, 633 (4 Cir., 1966).

We agree with the petitioner that the search warrant in question was

invalid under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This, however, does not answer the question of whether his confession was the fruit of the unlawful search and seizure. In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court said, "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" In *Wong Sun,* the court was concerned with statements given by the defendants, Toy and Wong Sun. Toy had given a statement almost immediately after the police had broken into his home. The government argued that, although the entry was unlawful, the confession resulted from "an intervening independent act of free will." The court said, "This contention, however, takes insufficient account of the circumstances. Six or seven officers had broken the door and followed on Toy's heels into the bedroom where his wife and child were sleeping. He had been almost immediately handcuffed and arrested. Under such circumstances it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." The police had also unlawfully entered the residence of Wong Sun but he failed to make any statement until two days after he had been released from custody on his own personal recognizance. The court held that his confession "ha[d] 'become so attenuated as to dissipate the taint.'" In interpreting *Wong Sun,* the Fourth Circuit has said that a subsequent confession would be admissible when it was "freely and voluntarily made without coercion, either physical or psychological," United States v. Close, 349 F.2d 841 (4 Cir., 1965),

and that it would be tainted where it was the "direct result of confrontation with the fruits of the seizure," Jacobs v. Warden, Maryland Penitentiary, 367 F. 2d 321 (4 Cir., 1966).

■ We think these cases stand for the rule that there must be a strong nexus or interrelationship between the initial illegality and any subsequent confession. This nexus can be shown only where the decision to speak is significantly affected by the prior constitutional error. Where the statement is given voluntarily, without unlawful coercion, either physical or psychological, the nexus is so attenuated as to dissipate the taint. *Wong Sun* dealt with an illegal arrest rather than a confrontation with inadmissible evidence, but we think the legal standard for voluntariness in both cases would be the same. The only difference would be factual, in that such a confrontation potentially might have a more coercive effect than the mere fact of an unlawful arrest. The *Miranda* warnings would, in large part, remove the coercion to speak after an illegal arrest. They would not do so when the defendant is confronted with illegally obtained evidence. *Miranda* warnings apprise one of his right to remain silent, but they fail to inform him that the evidence may never be used against him. Where the unlawfully obtained evidence exerts a substantial influence on a person's decision to speak, then this evidence is tainted with the initial constitutional error.

■ In the present case the petitioner has failed to show that the search and seizure substantially influenced his decision to confess to these completely unrelated crimes. Only when his brother-in-law was arrested did the petitioner change his mind, and the police at once refused to take a statement until he had seen counsel. Wickline then insisted on confessing to the unrelated crimes. His statement was voluntary in every sense of the word. His prior refusal to speak clearly demonstrates a rational state of mind and the minimal influence the seized evidence played in his later deci-

sion to confess.[1] Wickline was simply trying to exculpate his brother-in-law and this was the impetus for his statements.

Once the police had refused to take a confession on the King's burglary, the circumstances had become sufficiently neutralized so that any initial taint had been purged. Petitioner then took the initiative and cannot now complain of any prior error. One reason for extending the exclusionary rule to the fruits of illegal police activity is to deter future purposeful violations by taking away any incentive to do so. This rationale is inapposite to the present case because the police not only refused to sample the fruits of their initial error, but also neither knew of the unrelated crimes nor initiated the confessions. "There [*Wong Sun*] the Supreme Court based its application of the exclusionary rule on the need for deterring unlawful police conduct. 371 U.S. at 486, 83 S.Ct. 407 [9 L.Ed.2d 441]. The theory of deterrence operates 'only if an excludable piece of evidence is the target of police activity.'" Collins v. Beto, 348 F.2d 823 (5 Cir., 1965).

■ Assuming arguendo that the confession could have been suppressed, the petitioner is still not entitled to relief. Wickline was arrested on March 3, 1967, and his preliminary hearing was scheduled for March 6. At that time the court appointed an attorney to represent him and the hearing was continued until March 20 and then to April 7. The petitioner pleaded guilty to the charges on May 25, 1967. Wickline's defense attorney testified that after his appointment he met with Wickline on three occasions. Upon seeing the affi-

davit for the King's search warrant, counsel thought something was defective, although he could not recall the specific reason at the time of the plenary hearing. He testified that he brought the matter to his client's attention and told him there was a "slim chance" of suppressing his confession. Petitioner informed his attorney that the confession was given voluntarily, that he was guilty and wanted to plead guilty so that his family would not become involved in the affair. Wickline's attorney dropped the confession issue and concentrated on plea bargaining with the prosecution. At the time of his plea, the petitioner told the judge that his confession had been completely voluntary.

In McMann v. Richardson, 397 U.S. 759, 767, 90 S.Ct. 1441, 1446, 25 L.Ed. 2d 763 (1970), the Court said, "For present purposes, we put aside those cases where the defendant has his own reasons for pleading guilty wholly aside from the strength of the case against him. * * * In these cases, as the Court of Appeals recognized, the confession, even if coerced, is not a sufficient factor in the plea to justify relief." Before confessing to these crimes, the petitioner testified that, "I told them that I didn't want my brother-in-law to become involved because he was not guilty of anything." He told his attorney that he wanted to plead guilty because he did not want his family involved. We find that Wickline's initial reason for confessing was basically the same as his motivation for pleading guilty. "A defendant's primary motivation in pleading guilty, regardless of what has gone on before, may be his own knowledge of

1. At the time of the guilty plea, the prosecution presented stolen merchandise from these three burglaries to assist in establishing the factual basis for the plea. This evidence was also found in the brother-in-law's home, but it is unclear from the record exactly when it was discovered. After the petitioner confessed to the crimes, the police secured a second warrant to search the home. It may have been, however, that the police already

had the merchandise in their possession when Wickline confessed. He has never emphasized this point in all his state and federal habeas corpus proceedings. Even if the police had the merchandise when the confessions were given, they were not initially looking for it, had no idea that it was linked to other specific burglaries, or in any way exploited it. This evidence in no way affected Wickline's decision to confess.

his guilt and a desire to take his medicine." Doran v. Wilson, 369 F.2d 505, 507 (9 Cir., 1966). We would simply say that Wickline's knowledge of his guilt in conjunction with his desire to save his family further grief were the reasons for his plea, "wholly aside from the strength of the case against him." McMann v. Richardson, *supra.*

Also, we cannot say that Wickline's attorney was ineffective in failing to further investigate the circumstances surrounding the King's search and subsequent confession. Counsel testified that he informed the petitioner that there was a "slim chance" that the confession could be suppressed, but Wickline denies this. If his defense attorney is to be believed, then the petitioner made an intelligent decision to plead guilty and his counsel's actions were "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, *supra*; Brewer v. Peyton, 431 F.2d 1371 (4 Cir., 1970). However, we need not reach this point because Wickline's attorney was not ineffective even though he might never have advised him of the "slim chance." Counsel met with the petitioner on three separate occasions and inquired into the circumstances leading to the confessions. The defense attorney testified, and we have no doubt, that the petitioner said he had voluntarily confessed and wanted to plead guilty for the above-mentioned reasons. Counsel also talked with the police and Commonwealth's Attorney and they further corroborated the voluntariness of Wickline's statement. At this point further investigation ceased and counsel permitted his client to plead guilty.

In Jones v. Cunningham, 313 F. 2d 347 (4 Cir., 1963), it is said that, "We cannot acquiese in the suggestion that because Jones told his court-appointed attorney that he was guilty there was nothing else for the lawyer to do but to plead him guilty and hope for a light sentence. * * * Of course, it is not for a lawyer to fabricate defenses, but he does have an affirmative obligation to make suitable inquiry to determine whether valid ones exist." In *Jones,* the attorney was appointed the day of trial and failed to inquire even into the circumstances surrounding an allegedly coerced confession. Upon learning of the statement he simply advised his client that he must plead guilty. In the present case the defense attorney affirmatively questioned his client on the circumstances surrounding the confession and learned that it had been given "voluntarily." The concept of voluntariness has several different meanings in the law, see Mr. Justice Brennan's dissent in Parker v. North Carolina, 397 U.S. 790, 799, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), and it is at best difficult in the context of *Wong Sun.* In retrospect we cannot say that counsel's actions here, in accepting Wickline's statement that his confession was voluntary, were outside the range of competence demanded of attorneys in criminal cases. It appears from the state court record that, at the time of the guilty plea, he fully understood that the police originally entered the home in connection with the King's burglary. Also, Wickline not only admitted his guilt but wanted to plead accordingly. Counsel cannot be considered ineffective where his client's own statement of the facts raises no defense and he wants to assume the burden of his criminal conduct. See Horne v. Peyton, *supra*; Brewster v. Peyton, *supra.* "The courts must provide indigent defendants with competent counsel who are ready, willing and able to assist a defendant charged with a felony, but the courts cannot require a defendant to make use of such counsel." Hairston v. C. C. Peyton, 282 F.Supp. 907 (W.D.Va., 1968).

For the reasons heretofore stated, based upon the state and federal court records and the evidentiary hearing granted the petitioner, it is ORDERED that the petition for writ of habeas corpus be, and it hereby is, Denied and Dismissed.