# Richmond

## Jim Edward Warlick v. Common-
## wealth of Virginia.

October 14, 1974.

Record No. 731065.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman, and Poff, JJ.

*Enos Richardson, Jr.*, for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

I'Anson, C.J., delivered the opinion of the court.

Defendant, Jim Edward Warlick, was charged in an indictment with breaking and entering in the nighttime a certain drug store with intent to commit larceny therein. Defendant waived trial by jury and was found guilty as charged and sentenced to five years in the state penitentiary.

The defendant contends that the trial court erred in denying his motion to exclude his confession and other statements made to the police as a result of an illegal search of his home.

The evidence shows that during the evening of November 27, 1972, the Metro Drug Store, in Fredericksburg, Virginia, was broken into and a quantity of controlled drugs was stolen. For several hours prior to the breaking and entering a yellow

automobile with a black top, bearing Texas license plates, was seen cruising the area. At approximately 10:30 that night two persons saw the car parked near the drug store with no one in it, and one of the witnesses recorded its license plate number. After the car had left, the two witnesses went to the store to investigate and found that it had been broken into. The police were notified and given the license plate number of the automobile.

Upon checking with the Texas authorities, it was learned that the car was registered in the name of Roy Warlick, later determined to be the defendant's father. A search warrant was obtained, and several police officers went to the Warlick home around 4:00 a.m. on November 28th.

After gaining admittance to the Warlick home, one of the officers told Roy Warlick that the Metro Drug Store had been broken into and entered; that certain controlled drugs had been taken; that his automobile had been seen at the scene; and that they had a warrant to search his home. During this time the defendant, who had been asleep in an upstairs bedroom, came downstairs and told the officers that he had been driving his father's car that night. Shortly thereafter two vials of drugs were found by Officer Arline in a coat in defendant's bedroom closet. Defendant was then placed under arrest and given the *Miranda* warnings. Although advised that the bottles had Metro Drug Store labels on them, defendant stated that he did not know anything about the break-in or the drugs.

While on the way to police headquarters defendant was questioned about the break-in, and he again denied any knowledge of it. When they reached the police station, defendant was again advised of his constitutional rights before he was questioned by one of the officers. The two bottles of drugs were placed on a desk in the "booking" room where defendant was being interrogated. Defendant still denied any knowledge of the break-in. He was later taken to another room where there was less confusion, and another officer conducted the questioning. The two vials of drugs were also brought into the room. Defendant volunteered the information that he had been in trouble over drugs in Texas. However, he did not admit any culpability as to the breaking and entering of Metro Drug Store. When asked by the second questioning officer where the other stolen drugs were hidden, defendant did not respond. Defendant

was asked how he would feel if some children got hold of the drugs. He then told the officer where the other drugs were hidden and led them to a field where they were recovered. He never admitted, however, that he had broken into and entered the drug store.

Defendant testified that he took the officers to the cache of drugs of his own free will, and that the reason he did so was to prevent them from falling into the hands of children. In reply to a question whether he had made the decision to sacrifice himself to prevent the possibility of children finding the drugs, he stated that he had and that he knew he was in trouble.

The Commonwealth conceded in the trial below that the search and seizure of the two vials of drugs in the defendant's home was unlawful, and the trial court suppressed that evidence.

Defendant argues that his confession and other statements made to the police had been obtained as a result of the illegal search of his home, thereby violating his rights under the Fourth and Fifth Amendments to the Constitution of the United States, and thus were inadmissible in evidence under the "fruit of the poisonous tree" doctrine.

That doctrine is a facet of the federal exclusionary rule first enunciated in *Weeks* v. *United States*, 232 U.S. 383 (1914), and made applicable to the states in *Mapp* v. *Ohio*, 367 U.S. 643 (1961). The exclusionary rule operates not only against evidence seized and information acquired during an unlawful search or seizure but also against derivative evidence discovered because of the unlawful act. *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 (1920); *Wong Sun* v. *United States*, 371 U.S. 471 (1963). *See also Nardone* v. *United States*, 308 U.S. 338 (1939).

Even though the exclusionary rule operates to exclude such illegally acquired "direct" or "derivative" evidence or information, it does not mean that all such evidence or information is rendered forever unusable. This concept was pointed out in the three cases cited above.

In *Silverthorne*, the Court said:

". . . The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts

thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed." 251 U.S. at 392.

In *Nardone*,[1] it was said:

". . . Sophisticated argument may prove a causal connection between information obtained through illicit [activity] and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint." 308 U.S. at 341.

Later, in the case of *Wong Sun* v. *United States, supra,* principally relied upon by defendant in support of his position, the Supreme Court made it. abundantly clear that not all evidence is " 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Continuing, the Court said:

"Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U.S. at 488.

In construing *Silverthorne, Nardone* and *Wong Sun,* courts have recognized that there are three limitations to the "fruit of the poisonous tree" doctrine, namely: (1) evidence attributed to an independent source; (2) evidence where the connection has become so attenuated as to dissipate the taint; and (3) evidence which inevitably would have been gained even without the unlawful action. *See* Annot., "Evidence — Fruit of Poisonous Tree" 43 A.L.R.3d 385, 398-406, §§ 6-9 (1972), and the many cases there collected.

It has been held in several recent cases that the giving of the *Miranda* warnings after an illegal search and seizure and before a confession by an accused constitutes a sufficient break in the causal chain between the illegal search and seizure and the

---

[1] There the *Silverthorne* rationale was approved and Justice Frankfurter referred to the principle as the "fruit of the poisonous tree" doctrine.

confession, and therefore the taint of the illegal act is dissipated *See State* v. *Rocheleau,* 313 A.2d 33 (Vt. 1973); *State* v. *Braun,* 82 Wash.2d 157, 509 P.2d 742 (1973); *Jetmore* v. *State,* 275 So.2d 61 (Fla.Dist.Ct.App. 1973). *See also Murray* v. *State,* 505 S.W.2d 589 (Tex.Crim.App. 1974). On the other hand, some courts have held that the *Miranda* warnings were insufficient to purge the primary taint of the illegal search and seizure. *See People* v. *Johnson,* 70 Cal.2d 541, 75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366, *cert. denied,* 395 U.S. 969 (1969); *Fuller* v. *State,* 246 Ark. 138, 144, 437 S.W.2d 780, 783 (1969); *Commonwealth* v. *Daniels,* 455 Pa. 552, 558, 317 A.2d 237, 240 (1974). *See also Wickline* v. *Slayton,* 356 F.Supp. 140, 143 (E.D. Va. 1973).

We need not decide whether the two *Miranda* warnings given defendant were alone sufficient to purge the primary taint of the illegal search and seizure, because here the record does not show that the police exploited the illegally seized evidence in obtaining an admission from the defendant as to the whereabouts of the hidden drugs. The statements of the defendant himself, which he admitted were made freely and voluntarily, demonstrate that the presence of the seized drugs in the room where he was being questioned did not influence his decision to lead the police to the cache of drugs. His evidence shows that he agreed to take the officer to the hidden drugs when he realized there was a possibility that they might fall into the hands of children. It is clear from the evidence that the motivating factor behind defendant's confession was a humanitarian concern not to let the drugs fall into the hands of children, and not the fact that he had been confronted with the illegally seized vials of drugs. Even if there was a causal connection between the illegal search and seizure and defendant's confession, or admission, it was so attenuated and distant from the illegal search as to dissipate the taint. Thus the trial court did not err in admitting into evidence the confession and the drugs recovered as a result of the confession.

The statements made by the defendant that he had driven his father's car the night of the break-in and his voluntary admission that he had been in trouble over drugs in Texas were also properly admitted in evidence. Defendant was identified at his trial by a witness as the driver of the car involved. Hence, that evidence was admissible under the independent source exception. The statement by the defendant that he had been in

trouble over drugs in Texas was made after the taint of the illegal search and seizure had been removed. Moreover, that evidence would have inevitably been gained by the police without unlawful action on their part.

For the reasons stated, the judgment of conviction is

*Affirmed.*