COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Frank and Senior Judge Hodges
Argued at Salem, Virginia


JAMES READ DAVIS

                                    MEMORANDUM OPINION* BY
v.    Record No. 2985-98-3          JUDGE WILLIAM H. HODGES
                                         JANUARY 18, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                 J. Samuel Johnston, Jr., Judge

          Thomas S. Leebrick (Thomas S. Leebrick, P.C.,
          on brief), for appellant.

          Michael T. Judge, Assistant Attorney General
          (Mark L. Earley, Attorney General, on
          brief), for appellee.


     James Read Davis, appellant, was convicted in a bench trial

of being an accessory after the fact to grand larceny.  On appeal,

appellant contends the trial court erred by denying his motion to

suppress evidence obtained as a result of a warrantless search and

seizure.  Appellant also contends the evidence was insufficient to

support his conviction and the trial court erroneously admitted

hearsay evidence.  Finding no error, we affirm.

                            FACTS

     Between the late hours of April 21, 1998 and the early hours

of April 22, 1998, someone broke into Phillips Equipment

_____

          * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Corporation (Phillips Equipment) and stole six riding lawn mowers valued at $12,675. Five of the riding mowers were green and yellow John Deere brand mowers, and one was a red and white mower manufactured by Gravely. Someone had cut through a fence to gain access to the lawn mowers. Police recovered a license plate lying on the ground inside the fence.

Theodore Lee Lawrence testified that the license plate belonged to a utility trailer owned by him and registered with DMV in his name. Lawrence loaned the trailer to appellant "two and a half, three years" earlier because Lawrence had no trailer hitch on his truck enabling him to use the trailer. Appellant operated a landscaping business, involving grading, seeding and the cutting of lawns.

Investigator Robert Thompson investigated the theft. He contacted DMV and learned that the license plate recovered at the crime scene belonged to Lawrence's trailer. Lawrence told Thompson that appellant had the trailer, so Thompson proceeded to appellant's house. Thompson drove to appellant's house and saw the trailer parked in appellant's yard. He parked in a driveway on appellant's property leading to a garage. The trailer was parked between the driveway and appellant's house. On his way to appellant's house, Thompson noticed that the trailer had no license plate. He verified that the VIN number on the trailer matched that of the trailer owned by Lawrence, and he "saw what appeared to be [lawn mower] tire tracks" going from the trailer to

-

a garage.  The garage was large enough to house the stolen lawn mowers.  He then proceeded to appellant's house, knocked on the front door and side door but got no response.  Seeing no one in the backyard, Thompson called a deputy to remain at the scene while he, Thompson, obtained a search warrant.  While outside waiting for the deputy, appellant came out of his house and asked Thompson what he wanted.  Thompson identified himself and advised appellant that he was investigating the theft of lawn mowers.  Thompson told appellant "he wasn't under arrest and he wasn't obligated to talk to [him]."  Appellant "said he didn't know anything about any lawn mowers or anything about anyone having his trailer."  Appellant "said he thought [the trailer] had the tag on it the night . . . before."  Thompson asked appellant "if he had any objection if [he] searched his garage to see" if the stolen lawn mowers were inside, and appellant "stated no."  Thompson then had appellant sign a permission to search form.  The form contained the following:

> I, James Davis [and] Beverly Anderson, have
> bee[n] informed by Inv. Thompson and
> _____ who made proper identification
> as (an) authorized law enforcement
> officer(s) of the Campbell Co. Sheriff's
> Office of my CONSTITUTIONAL RIGHT not to
> have a search made of the premises and
> property owned by me and/or under my care,
> custody and control, without a search
> warrant.  Knowing of my lawful right to
> refuse to consent to such a search, I
> willingly give my permission to the above
> named officer(s) to conduct a complete
> search of the premises and property,
> including all buildings and vehicles, both

-

> inside and outside of the property located at RT 3 Box 250 J Lybg. (Wheeler RD).  The above said officer(s) further have my permission to take from my premises and property, any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation.  This written permission to search without a warrant is given by me to the above officer(s) voluntarily and without any threats or promises of any kind at 12:30 P.M. on this 22 day of April 1998, at RT 3 BOX 250 J Lybg.

After Thompson read the contents of the form to appellant, appellant signed it.  Deputy Jones and Beverly Anderson, appellant's girlfriend, signed the form as witnesses.  Appellant then unlocked the garage, allowing Thompson to enter.  Inside, Thompson found the stolen lawn mowers.  He asked appellant about them, and appellant "said that was the first time he'd seen them" and he did not know how they got in there.  He told Thompson that the last time he had been in the garage was around 9:00 p.m. the night before (April 21, 1998).  Appellant went to the other side of the garage and made a telephone call on a cellular telephone.  Thompson testified that, earlier, before appellant exited his house, he "heard what appeared to be [a] cellular phone ring inside the garage."  Thompson kept his attention on appellant the entire time they were inside the garage and testified that appellant did not touch any of the lawn mowers.

Thompson, Investigator Staton and Deputy Jones processed the stolen lawn mowers for fingerprints, after which they arrested

-

appellant.  Appellant waived his Miranda rights, and Thompson asked appellant if they would find any of appellant's fingerprints on the stolen lawn mowers.  Appellant "said maybe the Gravely [mower], that he had walked over and touched it."

Thompson testified that he had earlier looked through an opening in the garage door and saw a green John Deere tractor.  On cross-examination, Thompson was unsure whether he had looked into the opening in the garage door before or after knocking on appellant's door.  However, Thompson reiterated that he did not tell appellant that he had looked through the garage door or that he had seen a John Deere lawn mower inside.

Defense witness Joey Keyes testified that he and Lawrence Agee took the trailer between 1:00 a.m. and 3:00 a.m. without appellant's permission and stole the lawn mowers from Phillips Equipment without appellant's knowledge.  Believing appellant was out of town, he and Agee stored them in appellant's garage.  Keyes said the garage was unlocked when he and Agee placed the lawn mowers inside.  Afterwards, he padlocked the chain on the garage door.  Keyes testified that neither he nor Agee possessed a key to open the padlock.  When asked how he intended to take the lawn mowers from the garage, Keyes said he "hadn't thought of that." Keyes denied telling Investigator Guthrie that Agee called appellant the night of the theft, and he denied telling Guthrie that he suspected appellant knew about the theft.

-

Beverly Anderson lives in appellant's house and is appellant's girlfriend. She testified that she and appellant did not hear Thompson knock on the door on April 22, 1998. They first became aware of Thompson's presence when Anderson went upstairs from the basement sleeping area and saw Thompson outside in the yard.

Guthrie testified in rebuttal about a conversation he had with Keyes. Keyes told Guthrie that Agee made a telephone call after they loaded the lawn mowers on the trailer and left Phillips Equipment, after which they took the stolen property to appellant's garage. Keyes did not know if Agee spoke with appellant, but Guthrie recalled that Keyes said "he assumed [Agee} did, because that's where they took" the stolen lawn mowers and stored them.

## MOTION TO SUPPRESS

The trial judge denied appellant's motion to suppress, finding that the Commonwealth showed that consent to search was obtained independent of any possibly illegal search of the curtilage. The trial judge found "no evidence" that appellant knew that the officer may have looked into the garage "when his consent was given freely and voluntarily."

On appeal, appellant asserts Investigator Thompson "illegally developed probable cause for a search prior to obtaining consent," and "[t]he knowledge learned by his illegal methods was then used to obtain the defendant's consent to search." Therefore,

-

appellant argues, the evidence obtained from the garage was the "fruit of the poisonous tree." Appellant also contends his consent "was a product of implied or constructive duress or coercion."

## A.   Exclusionary Rule

Generally, the exclusionary rule bars the admission of "evidence seized and information acquired during an unlawful search or seizure [and] also . . . derivative evidence discovered because of the unlawful act." Warlick v. Commonwealth, 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974). In determining whether the evidence is derivative and therefore barred as "fruit of the poisonous tree," the question is "'whether[,] granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun v. United States, 371 U.S. 471, 488 (1963) (citation omitted). Evidence is obtained by means "sufficiently distinguishable" to be admissible despite illegality if it is "evidence attributed to an independent source" or "evidence where the connection has become so attenuated as to dissipate the taint." Warlick, 215 Va. at 266, 208 S.E.2d at 748.

The purpose of the exclusionary rule is "'to deter police misconduct.'" Johnson v. Commonwealth, 21 Va. App. 172, 175, 462 S.E.2d 907, 909 (1995) (citation omitted). Where the illegal

-

activity of the police did not lead to discovery of evidence a party seeks to exclude, the exclusion of that evidence does not meet the purpose of the exclusionary rule, which is to deter future unlawful police conduct. See id. "A . . . consent to search obtained subsequent to an unlawful search may be an independent source if such . . . consent is not obtained by exploitation of the unlawful search or is so attenuated as to dissipate the taint of the unlawful search." Commonwealth v. Ealy, 12 Va. App. 744, 750, 407 S.E.2d 681, 685 (1991).

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted). So viewed, the evidence proved that appellant met with Thompson in appellant's yard, at which time Thompson informed appellant he was investigating a theft of lawn mowers. Thompson advised appellant he was not under arrest and was not obligated to speak with him. Appellant denied knowledge of the theft, and Thompson asked for appellant's consent to search the garage. Thompson testified that he did not inform appellant that he looked into the garage. Following a detailed reading of the consent to search form advising appellant of his constitutional rights, appellant signed the form and consented to a search of his garage.

-

Anderson testified that she and appellant were not aware of Thompson's presence until she came upstairs and saw him in the yard. Thus, there was no evidence that Anderson or appellant were aware that Thompson looked in the garage.

Assuming arguendo that Thompson's act of peering through the garage was an unlawful search, we find that appellant's subsequent consent to search was "not obtained by exploitation of the [allegedly] unlawful search." Ealy, 12 Va. App. at 755, 407 S.E.2d at 688.

### B. Consent

Appellant contends his consent to search was given under duress and coercion and was, therefore, invalid because Thompson obtained appellant's consent based on his "exploitation of his illegal search" of the garage. That argument assumes that appellant was aware that Thompson looked in the garage and saw one of the lawn mowers; however, as explained in Part A., above, there was no evidence that appellant was aware of Thompson's search or that Thompson informed appellant that he looked in the garage.

When the Commonwealth seeks to justify a warrantless search on the basis of consent, it bears the burden of proving by a preponderance of the evidence that the consent was voluntary. See Camden v. Commonwealth, 17 Va. App. 725, 727, 441 S.E.2d 38, 39 (1994); see also Bumper v. North Carolina, 391 U.S. 543, 548 (1968). In order to determine whether consent to a particular search was "voluntary," the test is whether the search is "the

-

product of an essentially free and unconstrained choice" or whether the consenter's "will has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973); see also Lowe v. Commonwealth, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977). "The question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227.

Thompson carefully advised appellant of his constitutional right "not to have a search made" of his garage and his "lawful right to refuse to consent to such a search." Moreover, the evidence established that Thompson did not tell appellant that he looked into the garage and what he saw when he looked inside. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The fact finder believed Thompson's testimony that he did not tell appellant that he looked in the garage and saw a John Deere lawn mower. The Commonwealth presented credible, competent and sufficient evidence to prove by a preponderance of the evidence that appellant freely and voluntarily consented to the search. Accordingly, the trial court did not err in refusing to suppress the evidence on that basis.

-

## SUFFICIENCY OF THE EVIDENCE

After the Commonwealth presented its case-in-chief, counsel for appellant moved to strike the evidence on the basis that there was insufficient evidence that he stole the lawn mowers. Defense counsel argued "at most their evidence would show I suppose, and not conceding the point, but I would say at most a misdemeanor of accessory after the fact." After the parties rested, defense counsel argued there was no proof of "guilty knowledge" or mens rea to support a conviction for grand larceny or accessory after the fact.

"Absent proof of an admission against interest, knowledge necessarily must be shown by circumstantial evidence." Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983) (guilty knowledge of receiving stolen goods can be proven by circumstantial evidence). See also Campbell v. Commonwealth, 12 Va. App. 476, 483, 405 S.E.2d 1, 4 (1991) (en banc) (intent must often be proven by circumstantial evidence). Whether appellant acted with the requisite mens rea was a question of fact to be determined by the fact finder. See Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992).

The five stolen lawn mowers were found in appellant's padlocked garage less than twenty-four hours after the theft. Appellant possessed the key to open the garage. Appellant told Thompson the last time he entered the garage was 9:00 p.m. on April 21, 1998, four to six hours before the theft occurred.

-

However, after Thompson asked appellant if the police would find his fingerprints on any of the stolen property, appellant said he might have touched one of the stolen lawn mowers. Thompson testified he carefully observed appellant inside the garage and appellant did not touch any of the lawn mowers. Immediately after the theft, Keyes and Agee drove to appellant's house, hid the lawn mowers in the garage, and locked the garage door. Keyes testified that Agee telephoned someone after the theft. Although Keyes denied that appellant knew about the theft, the Commonwealth impeached his credibility regarding his earlier denial that he suspected that his accomplice, Agee, telephoned appellant just before they stored the stolen goods in appellant's garage. Finally, Keyes testified that neither he nor Agee possessed the key to open the padlock and get into appellant's garage.

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant possessed guilty knowledge that stolen property was stored in his garage.

### ADMISSION OF GUTHRIE'S TESTIMONY

During the cross-examination of Keyes, the Commonwealth's attorney questioned Keyes about a telephone call made by Agee immediately after the crime. She then asked Keyes whether he told Investigator Guthrie that he suspected appellant knew about the crime. Keyes denied telling Guthrie that he thought Agee

-

had called appellant, and he denied having any suspicion that appellant knew about the completed theft.

During rebuttal, Guthrie testified that, in his conversation with Keyes, Keyes "assumed that" Agee "spoke to" appellant "because that's where they took" the property immediately after the theft.

"'If a witness denies or is unable to recall a prior statement, a party may impeach him by introducing other evidence, such as another witness who heard the inconsistent statement.'" Newton v. Commonwealth, 29 Va. App. 433, 443, 512 S.E.2d 846, 850 (1999) (quoting Edwards v. Commonwealth, 19 Va. App. 568, 572, 454 S.E.2d 1, 2-3 (1995)). Although Keyes' "assumption" that Agee called appellant may not have been admissible in the first instance, by denying that he made a statement indicating his "suspicion" or "assumption" that appellant was aware of the crime, Keyes subjected himself to impeachment through Guthrie's testimony. See id. Thus, Keyes' statement to Guthrie that he assumed Agee spoke with appellant necessarily indicated a suspicion that appellant was aware of the completed crime. Accordingly, the trial judge did not commit reversible error in allowing the testimony.

For the reasons stated, appellant's conviction is affirmed.

Affirmed.

-