# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Commonwealth of Virginia

v.

Stephen A. Adderley

October 29, 2007

Case Nos. CR07-845 and CR07-845-01

BY JUDGE A. JOSEPH CANADA, JR.

Defendant was charged with (1) possession with the intent to distribute over five pounds of marijuana; (2) knowingly and intentionally possessing or transporting a firearm; and (3) unlawful possession of a controlled substance while possessing a firearm.

Defendant made a motion to suppress the evidence on the basis that the subject search warrant was defective and evidence obtained as a result of the warrant is tainted and must be suppressed. Defendant also asserts that his Miranda rights were violated and his alleged self-incriminating statements must be suppressed.

## Issue 1: *Standing of Defendant to Object to Search of Neighbor's Attic*

The first issue in this case involves whether Defendant has standing to object to the seizure marijuana from his neighbor's attic. Detective Meador testified at the suppression hearing that upon searching Defendant's house, the officers noticed a large hole in the firewall of the attic leading into the neighbor's attic. The officers observed a large quantity of marijuana on the other side of the hole and then spoke to the neighbor, Barbara Riveros, about searching her house. Detective Meador indicated that the neighbor consented to the search and also turned over an additional nine pounds of marijuana and a pistol that Defendant had asked her to hold for him.

The requirements for standing determine whether Defendant may object to the search and seizure of marijuana and a firearm from the neighbor's residence. The court must determine whether, based on the totality of the circumstances, Defendant objectively had a reasonable expectation of privacy at the time and place of the search. *McCoy v. Commonwealth*, 2 Va. App. 309, 311, 343 S.E.2d 383 (1986). The line of cases establishing the bounds of a person's reasonable expectation of privacy do not extend this notion to the residence of another. See *Virginia Criminal Procedure* § 6:3, n. 11. However, Defendant asserts that the evidence acquired in the search of the neighbor's house was derivative evidence, acquired as a result of the illegal search of Defendant's home, and may be excluded under the fruit of the poisonous tree doctrine. See Defendant's Supplemental Memorandum of Law p. 5.

Once a defendant establishes that an illegal search occurred, the prosecution bears the burden to show that there was no causal connection between the illegal search and the evidence. *Hart v. Commonwealth*, 221 Va. 283, 269 S.E.2d 806 (1980). To meet this burden the prosecution must establish either (1) the connection between the illegal search and the tainted evidence was dissipated by the passage of time or intervening circumstances; (2) the evidence was obtained from a source independent of the illegal search; or (3) the discovery of the evidence was inevitable. *Warlick v. Commonwealth*, 215 Va. 263, 208 S.E.2d 746 (1974).

Due to the temporal proximity between the search of Defendant's house and the search of the neighbor's house, the tainted evidence was not dissipated by the passage of time. Furthermore, it cannot be said that the contraband would be ultimately or inevitably discovered by lawful means. The search of the neighbor's home was the direct result of the discovery that defendant smashed a hole in his own attic, creating an opening between the two homes. Defendant correctly points out that this case bears a factual similarity to

*Commonwealth v. Ealy*, as both cases present a question regarding the connection between voluntary consent to search and an alleged illegal search. 12 Va. App. 744, 750-51, 407 S.E.2d 681 (1991). Assuming for the moment that the search of Defendant's home was in fact illegal, the facts of this case indicate that the subsequent consent to search the neighbor's home occurred due to the exploitation of the initial illegality. See *Id.* at 757 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

Issue 2: *Reliability of the Informant/Validity of the Warrant*

The task of the magistrate in issuing a warrant is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The courts must grant great deference to the magistrate's interpretation of the predicate facts supporting the issuance of a search warrant and the determination of whether probable cause supported the warrant. *Id.*

The background behind the issuance of the warrant in this case involves a traffic stop in Prince William County, Virginia, Trooper Zarkauskas stopped Mr. Baltazar for a traffic infraction. During the stop, probable cause developed for the trooper to search the vehicle. The trooper discovered approximately fifty-two pounds of marijuana in the trunk of the vehicle. Mr. Baltazar stated to the trooper that he was delivering the large bundle of marijuana to Stephen Adderley at 1202 Owl Court in Virginia Beach. Mr. Baltazar described defendant's residence as an unpainted town home just off Indian River Road and indicated that the defendant drove a red Mitsubishi Gallant.

While Virginia does not require a formalistic approach to evaluating the issuance of search warrants, the issues of reliability and credibility are still useful in determining the validity of warrants issued on the basis of an informant's statements. See R. Bacigal, *Virginia Criminal Law and Procedure* § 37.2. Therefore, an affidavit for a search warrant based upon information from an informant must (1) establish the reliability of the informant and (2) set forth the underlying circumstances necessary to enable the magistrate to judge the validity of the informant's statements to the affiant. *Warren v. Commonwealth*, 214 Va. 600, 601-02, 202 S.E.2d 885 (1974). However, in certain circumstances a surplus of credibility may offset a deficiency of reliability or vice versa. *Virginia Criminal Law and Procedure* § 37.2.

Special Agent Wendel testified that he verified the address of Defendant and the description of Defendant's home and vehicle after receiving the incriminating information from the trooper. Additionally, a police officer conducted a criminal record check for Defendant and discovered that he had been charged with numerous criminal offenses including several involving illegal drugs. Based upon this information, a search warrant was issued for 1202 Owl Court.

Defendant points to the case of *United States v. Wilhelm* to support his assertion that the informant's tip failed to meet the standard of probable cause. 80 F.3d 116 (4th Cir. 1996). In *Wilhelm*, a police detective applied for a search warrant based solely on a telephone call from an unidentified individual, who stated that he or she observed marijuana in Wilhelm's home. *Id.* at 117. The Fourth Circuit indicated that the degree to which an informant's tip is corroborated is an important consideration in determining whether probable cause exists. *Id.* (citing *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir 1993)). The court in *Wilhelm* contrasted the corroboration of innocuous static details in cases where probable cause was found lacking to corroboration of specific details pointing to involvement in drug-related activity. *Id.* at 119-20.

Certainly, the credibility of the informant may be called into question in this case. The informant had never spoken to the police on a prior occasion, and clearly elicited the information regarding Defendant in order to lessen the severity of his own precarious position. However, the informant did speak with particularity in regards to the details of the drug transaction in addition to his knowledge of the home and automobile of Defendant. A law enforcement officer checked the criminal record of Defendant, which revealed at least one prior conviction for the sale of illegal drugs, and confirmed the address specified and vehicle of Defendant.

Even assuming that the information furnished to the magistrate does not fully comply with the requirements of probable cause, it certainly falls close enough to the line for the *Leon* good-faith exception to apply. See *United States v. Leon*, 468 U.S. 897, 919, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). *Leon* good-faith has been held in all but four circumstances:

> (1) Where the magistrate was misled by information in the affidavit which the affiant knew was false (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable, or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

*Id.*

These exceptions to *Leon* often occur in cases involving a "bare bones affidavit," in which no reasonable police officer could rely upon the warrant in good faith. *Wilhelm*, 80 F.3d at 123.

The affidavit relied upon in this case is at the very least objectively reasonable under *Leon*. The informant was not an anonymous tipster, but an individual engaged in the transportation of a large shipment of marijuana. Law enforcement officers corroborated his story in regards to the location and description of Defendant's vehicle and home. Furthermore, an officer located defendant's criminal records, which contained numerous offenses. Considering the totality of the circumstances, there was probable cause for the issuance of a search warrant in this case.

## Issue 3: *Violation of Defendant's Miranda Rights*

Defendant's final contention is that incriminating statements made to Special Agent Wendel violated his Miranda rights and must be suppressed. Defendant asserts that statements posed to Defendant by Special Agent Wendel were the "functional equivalent of express questioning," and were tantamount to interrogation. See *Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). Since there is no dispute that Defendant was in custody at the time that his self-incriminating statements were made, the sole query is whether the comments were solicited by the officer in violation of Defendant's Miranda rights.

Defendant was taken into custody during the search of his residence. Defendant invoked his Miranda rights and signed a form indicating his refusal to waive his rights. Special Agent Wendel then transported Defendant to the court complex for processing. Upon reaching the court complex, Wendel received a phone call from Detective Meador indicating that they discovered Defendant's cache of marijuana and his firearm. Wendel testified that Detective Meador instructed Wendel to wait for him to arrive before processing Defendant, as he planned to bring additional charges relating to the discovery of this evidence.

Special Agent Wendel testified that he stated to Defendant that Detective Meador found his "stuff," and informed Defendant of the new criminal charges. Defendant immediately stated that the gun was unloaded and he would never use it. Special Agent Wendel instructed Defendant that he had invoked his right to counsel and should remain silent. Wendel indicated that Defendant sat silently for approximately two or three minutes before making a

statement regarding Mr. Baltazar. Wendel once again reminded Defendant that he was not going to ask him any questions. Defendant then asked what Wendel could do to make the gun charges go away. Wendel responded that only the Commonwealth's Attorney could make certain charges go away and he would inform the Commonwealth that Defendant did not wish to further the investigation. Defendant made several more incriminating statements at this time.

Virginia cases interpret the *Innis* standard as requiring "a determination whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response." See *Blain v. Commonwealth*, 7 Va. App. 10, 371 S.E.2d 838 (1988). Thus, if a suspect's statements were not foreseeable given the statements made by the officer, they were volunteered and not subject to Miranda protections. *Id.* at 15.

In this case, the sum total of the officer's statements amounts to little more than a recitation of his previously invoked rights and specific answers to unsolicited questions posed by Defendant. This case differs from *Hines v. Commonwealth*, cited by Defendant, in that the police did not continue questioning the Defendant following his recitation of his rights. 19 Va. App. 218, 221, 450 S.E.2d 403 (1994) (holding that police statement asking Hines "whether he was going to be a witness or defendant in the matter" following Hines' invocation of his Miranda rights represented interrogation). Instead, the officer merely made a statement that evidence had been found and new charges would be brought against Defendant. The subsequent statements made by Defendant were unsolicited and cannot be suppressed because they were not the result of police interrogation.

Defendant has standing to object to the seizure of his firearm and marijuana from the neighbor's attic. The evidence seized was sufficiently connected to the search of Defendant's home to be considered derivative evidence and subject to the fruit of the poisonous tree doctrine. However, the affidavit supporting the search warrant meets the test for probable cause and the search of Defendant's home was constitutional The statements made to a state trooper by Mr. Baltazar, coupled with the confirmation of defendant's address, vehicle, and criminal record satisfy, at the very least, the test for *Leon* good faith. Defendant's statements to Special Agent Wendel will not be suppressed. These statements were unsolicited and not the result of interrogation or its functional equivalent.