698 S.E.2d 281

**David L. FOLTZ, Jr., s/k/a David Lee Foltz, Jr.**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0521–09–4.**

Court of Appeals of Virginia,
Alexandria.

Sept. 7, 2010.

70

Christopher R.K. Leibig (Andrea Moseley; Zwerling, Leibig & Moseley, P.C., on briefs), Alexandria, for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General; J. Robert Bryden, II, Assistant Attorney General, on brief), for appellee.

Present: FELTON, C.J., and HALEY and BEALES, JJ.

BEALES, Judge.

David L. Foltz, Jr., (appellant) was convicted by a jury of abduction with intent to defile pursuant to Code § 18.2–48 and was sentenced to life imprisonment. On appeal, appellant argues that the trial court erred in denying his motion to suppress. In particular, appellant contends that the court erred by ruling (1) that the placement of a GPS (global positioning system) device in the bumper of his work van did not violate the Fourth Amendment of the United States Constitution or Article 1, section 10, of the Virginia Constitution, and (2) that the use of a GPS device to track appellant did not violate the Fourth Amendment of the United States

Constitution or Article 1, section 10, of the Virginia Constitution.[1] After reviewing the relevant case law and the record here, we affirm appellant's conviction for abduction with intent to defile.

## I. Background

Appellant, a registered sex offender on probation for committing sexual assault, became a suspect in a new series of sexual assaults in Northern Virginia that followed a pattern similar to his previous crimes. At the time, appellant worked for a food services company that provided him with a company van. Company employees who were assigned vans were only allowed to drive them to the company headquarters, to off-site workplaces, and to their homes, unless they were given special permission. Appellant, however, was allowed to use the van assigned to him after work to drive to probation-related appointments. Employees were allowed to keep personal items in their assigned vans and were responsible for the vans while they were in the employees' possession.

The police reviewed appellant's schedule for work and for probation-related meetings, comparing that schedule to the areas and times for the series of unsolved sexual assaults. They determined that the offenses occurred "around the general area" where appellant worked and attended meetings, and the times were consistent with his work and meeting times. Based on all the information that they had collected, the police decided to monitor appellant's movements by attaching a GPS system to one of his vehicles. The police did not obtain a warrant. They also did not ask appellant's employer for permission to attach a GPS device to the van assigned to appellant.

---

1. This Court granted appellant's petition to consider three questions. However, during oral argument, appellant conceded that the Commonwealth now agreed with him that the GPS system was able to track appellant's van while it was in his employer's warehouse, which had been the central disagreement upon which the third question presented was based. Therefore, appellant concluded, his third question presented was not important to the resolution of his appeal. As a result, we do not consider the third question presented in this opinion.

On February 1, 2008, the Fairfax County police attached a GPS system to appellant's work van, which was parked on the street in front of appellant's home. The GPS system used three satellites to give the police information on the van's location. The GPS device itself operated on an independent battery and, therefore, did not draw any power from the van. To install the GPS device, an officer "reached [his] hand sort of underneath the bumper to a place that is not observable [from] the public street." The bumper on the van was "a long tube" with plastic ends and holes in it. The GPS device was attached to the left side of the rear bumper using a magnet and "a sticky substance."

The GPS system did not take pictures nor allow the police to hear any conversations. It could not track particularly well "in a covered parking area," but could provide general information in any place with cell phone service and could send a signal through glass and plastic. The system archived the information that it collected,[2] but the police could also track the GPS device in real time.

The police had no policy regarding the use of GPS devices, in part because the devices were not used particularly often.[3] The police did not predetermine how long they would track appellant. The police also did not develop a policy to avoid following the van into private areas.

The only allegedly private area that the van entered between February 1, 2008, and February 6, 2008, was appellant's employer's place of business, a warehouse located down a short access road marked "Private Property." The warehouse was not open to the public, and vans in the warehouse were not visible from the public street. The GPS tracking log included information that the van was at the workplace, but

---

2. The GPS log was introduced into evidence at trial.

3. According to the evidence adduced at the suppression hearing, the Fairfax County Police Department used GPS technology in 61 cases out of approximately 13,000 total criminal cases in 2005, 52 cases out of approximately 14,000 total criminal cases in 2006, and approximately 46 cases out of 14,000 total criminal cases in 2007.

the officers apparently did not examine this data before appellant's arrest.

The police did not examine any data from the GPS until the afternoon of February 5, 2008, when they observed, in real time via a computer screen with a map, that the van was driven in and out of various neighborhoods. This pattern of driving concerned the officers, who characterized the pattern as hunting behavior. The officers watched the data stream for about 30 to 40 minutes—as the van was driving around.

On the evening of February 5, 2008, another sexual assault occurred. The police checked the GPS log to determine if appellant's work van was in the area at the time of the attack. They discovered that the van was parked about a block or two away from the scene of the attack at the time it occurred. The police decided to follow appellant themselves on February 6, 2008, the next day.

While actually following appellant on February 6, 2008, the police observed him park his vehicle,[4] get out, and put on a jacket and gloves. Two officers then followed appellant on foot. They observed him run, grab a woman who was walking down the street, and knock her to the ground. Appellant then pulled his victim under a tree, pinned her down, and tried to unbutton her pants. The police stopped the assault and arrested appellant.

Prior to trial, appellant filed a motion to suppress all evidence collected after the police turned on the GPS system and began tracking the work van that he was driving. He argued that the police needed a warrant to attach the device to the van and also needed a warrant to use the GPS system to track him. At the conclusion of the suppression hearing, the trial court found appellant had standing to argue Fourth Amendment violations of privacy in the placement of the GPS on the van and in the tracking of the van.[5] However, the trial court denied appellant's motion to suppress, finding that the

---

4. At this time, appellant was driving a different vehicle—apparently his own truck.

5. The Commonwealth on appeal has argued, contrary to the ruling of the trial court, that appellant did not have standing because he was

police needed reasonable suspicion, not a warrant, to put the GPS device on the van and concluding that the police had reasonable suspicion that appellant was committing the sexual assaults. The court also found that the van was not seized when the GPS device was placed in the bumper and that appellant had no reasonable expectation of privacy in the exterior of a van parked on a public street. Regarding the tracking itself, the trial court found "all it did was technologically supplement that information which the police could have obtained by their own sensory perception by actually trailing him or following him for a period of time, which they ultimately did in making the arrest in this case." Thus, the trial court found that appellant had failed to show "any actual invasion of his privacy." In addition, the trial court also found that appellant failed to show that any tracking at his employer's warehouse violated appellant's privacy.

## II. The Fourth Amendment [6] and Privacy

Appellant argues that the installation of the GPS device in the bumper of his work van was both a search and a seizure of the vehicle.[7] He also argues that the use of the

---

using the van for purposes other than the purposes approved by his employer. However, this finding by the trial court in this particular case does not fall into the category of rulings that the Commonwealth would have been allowed to appeal. *See* Code § 19.2–398(A) (granting to the Commonwealth the ability to petition for appeal pretrial rulings in limited cases where a trial court has dismissed an indictment or suppressed evidence). Because the Commonwealth cannot legitimately raise the issue here, we will not address the question of standing.

6. The privacy rights in the Virginia Constitution are coextensive with those in the United States Constitution. *Lowe v. Commonwealth,* 230 Va. 346, 348, 337 S.E.2d 273, 274 (1985) (citing A.E. Dick Howard, I *Commentaries on the Constitution of Virginia* 182 (1974)); *Henry v. Commonwealth,* 32 Va.App. 547, 551, 529 S.E.2d 796, 798 (2000) (discussing the Fourth Amendment of the United States Constitution and Article I, § 10 of the Virginia Constitution). Therefore, although appellant's questions presented refer to both the United States and Virginia Constitutions, to facilitate the readability of this opinion, we reference only the Fourth Amendment in our discussion here.

7. The Commonwealth argues on appeal that appellant waived any argument that the placement of the GPS was a seizure. However,

GPS system was a search—both while he was driving the van and while it was parked inside his employer's warehouse.[8] Therefore, he contends, the police infringed upon his Fourth Amendment privacy interests and needed a search warrant before they could install the GPS device in the van and before they could activate the GPS system in order to track the van's movements.

On appeal, we review questions involving Fourth Amendment issues as mixed questions of fact and law. *McCain v. Commonwealth*, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). In such cases:

> we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error.

*Id.* at 552, 659 S.E.2d at 515 (citations omitted).

When considering a Fourth Amendment argument, courts must first determine whether a Fourth Amendment privacy right is involved—using a well-established, two-pronged test:

> [A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable. *See* [*Katz v. United States*, 389

---

appellant made this argument at trial, the prosecutor responded to the argument, and the trial court addressed the argument in its ruling. Therefore, although some comments that appellant made during the hearing could be interpreted to waive this particular portion of his argument, pursuant to the Supreme Court's holding in *Scialdone v. Commonwealth*, 279 Va. 422, 436–42, 689 S.E.2d 716, 723–27 (2010), we find that appellant sufficiently preserved this argument for consideration on appeal.

**8.** The trial court found, *inter alia,* that the police had reasonable suspicion that appellant was the perpetrator of a series of sexual assaults in the Northern Virginia area. Appellant does not contest this ruling on appeal.

U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, concurring) ]. We have subsequently applied this principle to hold that a Fourth Amendment search does not occur—even when the explicitly protected location of a house is concerned—unless "the individual manifested a subjective expectation of privacy in the object of the challenged search," and "society [is] willing to recognize that expectation as reasonable." [*California v.*] *Ciraolo,* [476 U.S. 207] 211 [106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986) ]. *Kyllo v. United States,* 533 U.S. 27, 33, 121 S.Ct. 2038, 2042–43, 150 L.Ed.2d 94 (2001); *see also Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984). Thus, in order to prevail here, appellant must establish both that he exhibited a subjective expectation of privacy in the bumper of the van and in his movements with the van *and* that society recognizes these expectations as reasonable.

### A. Installation of the GPS Device

Appellant argues that the police violated his privacy interests when they placed the GPS device inside the bumper of his work van while it was parked on the street in front of his house. He also argues that the police committed a seizure when they installed the GPS device because it "changed the nature" of the van by decreasing its value. We find neither argument persuasive.

### 1. Installation of GPS as a Search

Appellant claims he exhibited an expectation of privacy in the van's bumper while it was parked on a public street. The evidence does not support this assertion.

■■ Neither the United States Supreme Court nor the Supreme Court of Virginia has addressed the issue of whether installing a tracking device directly on a car violates an expectation of privacy. However, the United States Supreme Court in *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), considered facts similar to the ones in this case. In *Karo,* tracking devices were placed in containers of ether that were then purchased by Karo, who in turn placed

the containers in his vehicle. *Id.* at 707, 104 S.Ct. at 3299. In finding that the transfer of the container to Karo did not infringe on his privacy, the Court explained:

[The transfer] conveyed no information that Karo wished to keep private, for it conveyed no information at all. To be sure, it created a potential for an invasion of privacy, but we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment.

*Id.* at 712, 104 S.Ct. at 3302. Similarly here, the installation of the GPS device did not relay any private information to the police.

The United States Court of Appeals for the Ninth Circuit addressed whether the installation of tracking devices on a vehicle violates a suspect's expectation of privacy in *United States v. McIver,* 186 F.3d 1119 (9th Cir.1999). In that case, forestry agents photographed McIver at the site of growing marijuana plants and then attached two tracking devices to the undercarriage of his 4Runner. McIver argued that the agents needed a search warrant to attach the devices. The Ninth Circuit Court of Appeals found that the officers did not "search" the vehicle by placing magnetized tracking devices on its undercarriage because McIver did not prove "that he intended to preserve the undercarriage" of the vehicle "from inspection by others" and "the officers did not pry into a hidden or enclosed area." 186 F.3d at 1127.

Similarly here, appellant did nothing to prevent others from inspecting the bumper of the work van. *See Cardwell v. Lewis,* 417 U.S. 583, 591, 94 S.Ct. 2464, 2469–70, 41 L.Ed.2d 325 (1974) (finding a defendant's privacy rights were not violated when the police examined a tire and took a paint sample from a car in a public parking lot because the vehicle was exposed to the public). The vehicle was not parked on private property, but instead was on a public street where anyone could approach it. *See United States v. Pineda–Moreno,* 591 F.3d 1212, 1215 (9th Cir.2010) ("If a neighborhood child had walked up Pineda–Moreno's driveway and

crawled under his Jeep to retrieve a lost ball or runaway cat, Pineda–Moreno would have no grounds to complain."), *reh'g en banc denied*, —— F.3d ——, 2010 WL 3169573, 2010 U.S.App. LEXIS 16708 (Aug. 12, 2010). The police did not need to remove a lock, latch, or cover to reach into the bumper and attach the GPS device. *See United States v. Rascon–Ortiz*, 994 F.2d 749, 754–55 (10th Cir.1993) (finding that the agent did not violate a defendant's privacy by examining the undercarriage of a vehicle because "[t]he undercarriage is part of the car's exterior, and as such, is not afforded a reasonable expectation of privacy" and because the agent did not "disturb[ ] or move[ ] parts of the car in order to facilitate his observations"). As the United States Supreme Court has explained, "[t]he exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'" *New York v. Class*, 475 U.S. 106, 114, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986). Nothing in the record here suggests that appellant attempted to prevent the "public eye" from viewing the van or its bumper.

Because the actual act of simply placing the GPS device in the bumper of appellant's work van conveyed no private information to the police and because appellant did nothing to prevent the public from observing the bumper, we find he did not exhibit an expectation of privacy in this area of the van. Thus, the installation was not a search that raised a Fourth Amendment privacy issue.

As we find that appellant did not exhibit a subjective expectation of privacy in the bumper of his vehicle, we need not address whether society is prepared to recognize such an expectation as reasonable. However, we do note that the bumper of a van parked on a public street—as opposed to a place that would indicate appellant intended to prevent public access and viewing of the van—does not "provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities" that might occur in a bumper, especially when vehicles are parked on public streets that "are accessible

to the public and the police in ways that a home, an office, or commercial structure would not be." *Oliver,* 466 U.S. at 179, 104 S.Ct. at 1741; *see California v. Carney,* 471 U.S. 386, 392, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985) ("The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation."); *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976) (finding that "less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office").

### 2. Installation of GPS as a Seizure

Appellant also claims that he had an expectation of privacy against seizures of the van. He argues that the police seized the van when they placed the device in the van's bumper because it "changed the nature" of the property, decreasing its value.

The United States Supreme Court in *Karo* explained that seizure of property occurs "when 'there is some meaningful interference with an individual's possessory interests in that property.'" 468 U.S. at 712, 104 S.Ct. at 3302 (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). The Court then noted, "The existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, however, for an actual trespass is neither necessary nor sufficient to establish a constitutional violation." *Id.* at 712–13, 104 S.Ct. at 3302 (citing *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)).

Here, appellant does not establish the placement of the GPS in the van's bumper was a "meaningful interference" with his interest in the van. Although appellant contends that people commonly do not want to purchase vehicles that can be tracked by the police, it seems just as common for people to purchase cars that have devices installed that allow tracking of the vehicle. In addition, appellant's "possessory interests" in

the value of the van are exceptionally limited because he did not own the van. It belonged to his employer. The president of that company testified at the suppression hearing, but he did not express and has not expressed any concerns or objections regarding the installation of the device in his company's van.[9] Therefore, any decrease in the value of the van would have had a minimal, not a meaningful, interference with appellant's interests in the vehicle. We do not reach the question of whether there would have been a seizure of the van under these circumstances if appellant had owned the van because we do not need to do so in order to decide the question before us.[10]

Appellant urges this Court to consider *Commonwealth v. Connolly*, 454 Mass. 808, 913 N.E.2d 356 (2009), where the Massachusetts Supreme Court concluded that "the installation and use of the GPS tracking device" was a seizure. *Id.* at 811, 913 N.E.2d at 361. In that case, the Massachusetts police installed a GPS device in the engine compartment of Connolly's minivan, so that the device could draw power from the vehicle's battery. *Id.* at 811–12, 913 N.E.2d at 361–62. Relying on the Massachusetts Declaration of Rights, which is more expansive than the Fourth Amendment,[11] the Massachusetts court concluded:

> a warrant was required here because the initial installation of the particular device clearly constituted a seizure under art. 14. The installation required not only entry by the police into the minivan for one hour, but also operation of

---

9. The police did not ask appellant's employer for permission to install the GPS device.

10. Nor do we reach the question of whether there would have been a search of the van under this situation if appellant had owned the van because we do not need to do so in order to decide the question before us.

11. In *Commonwealth v. Balicki*, 436 Mass. 1, 762 N.E.2d 290 (2002), the Massachusetts Supreme Court found, upon considering the plain view doctrine, that the Massachusetts Constitution "affords greater protections to a person in certain circumstances than those provided by Federal decisions interpreting the Fourth Amendment." *Id.* at 11 n.11, 762 N.E.2d at 299 n. 11 (citation omitted).

the vehicle's electrical system, in order to attach the device to the vehicle's power source and to verify that it was operating properly. Moreover, operation of the device required power from the defendant's vehicle, an ongoing physical intrusion.

*Id.* at 822, 762 N.E.2d at 369. Clearly, the installation in *Connolly* differs greatly from the installation in this case. Here, the police did not access the inside of the vehicle by lifting the hood or moving any part of the van. The GPS device installed by the Fairfax police did not use any power from the van's battery, but instead operated independently, unlike the one in *Connolly*. In addition to these factual differences, the legal analysis of the Massachusetts court is not relevant here as Article I, § 10 of the Virginia Constitution is coextensive with the Fourth Amendment of the United States Constitution—not broader. *Lowe v. Commonwealth,* 230 Va. 346, 348, 337 S.E.2d 273, 274 (1985). Therefore, *Connolly* is not persuasive authority for this Court.

Instead, we find *McIver* instructive. In that case, discussed *supra,* the Ninth Circuit Court of Appeals found that officers did not "seize" the vehicle because the defendant did not prove that the placement of the tracking devices "deprived him of dominion and control of his Toyota 4Runner, nor did he demonstrate" that the devices damaged his vehicle in some way. 186 F.3d at 1127. The court concluded that McIver had not established that the placement "meaningfully interfere[d]" with his "possessory interest" in the 4Runner. *Id.*

We also find *United States v. Garcia,* 474 F.3d 994 (7th Cir.2007), persuasive. In *Garcia,* the police attached a self-powered GPS to Garcia's car while it was parked on a public street. Garcia argued that the installation of the GPS was a seizure of his car. The United States Court of Appeals for the Seventh Circuit disagreed, explaining that Garcia's argument was "untenable." The court explained:

The device did not affect the car's driving qualities, did not draw power from the car's engine or battery, did not take up room that might otherwise have been occupied by pas-

sengers or packages, did not even alter the car's appearance, and in short did not "seize" the car in any intelligible sense of the word.

*Id.* at 996.

In the case before this Court, as in *McIver* and *Garcia,* the installation of the GPS device in no way interfered with appellant's ability to operate the vehicle. The police did not damage the van by installing the GPS device in the bumper. No private information was exposed by the act of simply installing the device. In addition, as noted *supra,* appellant's possessory interest in the vehicle was limited, as the van belonged to his employer, not to him. We, therefore, conclude that any interference with appellant's limited possessory interest in the van was not a " 'meaningful interference' " by the police. *Karo,* 468 U.S. at 712, 104 S.Ct. at 3302. Thus, the installation in this case did not constitute a seizure for Fourth Amendment purposes.

## B. Activation of the GPS Device

Appellant also argues that the actual tracking of the van violated his Fourth Amendment privacy interests. Specifically, he contends that continually tracking his movements on the public roadways was a violation of his expectation of privacy. He also contends that tracking the van to his employer's warehouse, i.e., on private property, violated the Fourth Amendment.

Before addressing the specifics of his argument, we note that appellant raises several dire predictions of law enforcement officers attempting to track the whereabouts of every citizen in Virginia, if this Court finds the trial court did not err here. Several other appellate courts have acknowledged a very legitimate concern that, if the police are allowed to randomly track whole sections of the population without probable cause or reasonable suspicion, then privacy rights may well be violated. *See, e.g., United States v. Knotts,* 460 U.S. 276, 284, 103 S.Ct. 1081, 1086, 75 L.Ed.2d 55 (1983) ("[I]f such dragnet-type law enforcement practices as respondent envisions should eventually occur, there will be time enough then

to determine whether different constitutional principles may be applicable."); *Garcia*, 474 F.3d at 998 ("It would be premature to rule that such a program of mass surveillance could not possibly raise a question under the Fourth Amendment...."). However, this case does not involve dragnets and mass surveillance, so these warnings are not as relevant here. *See Dow Chemical Co. v. United States*, 476 U.S. 227, 239 n. 5, 106 S.Ct. 1819, 1827 n. 5, 90 L.Ed.2d 226 (1986) ("Fourth Amendment cases must be decided on the facts of each case, not by extravagant generalizations.").

### 1. Tracking on Public Roadways

Appellant argues that he exhibited an expectation of privacy while he was driving the work van down public streets and that society recognizes this expectation of privacy as reasonable. In making this particular argument, appellant raises concerns of an Orwellian society resulting from the use of sophisticated technologies such as GPS tracking—concerns that do indeed initially raise practical and constitutional alarms. *See Garcia*, 474 F.3d at 998 ("One can imagine the police affixing GPS tracking devices to thousands of cars at random, recovering the devices, and using digital search techniques to identify suspicious driving patterns. One can even imagine a law requiring all new cars to come equipped with the device so that the government can keep track of all vehicular movement in the United States."). However, given the facts of this particular case, as Judge Posner and the Seventh Circuit Court of Appeals also concluded in *Garcia*, "[w]hether and what kind of restrictions should, in the name of the Constitution, be placed on such surveillance when used in routine criminal enforcement are momentous issues that fortunately we need not try to resolve in this case." *Id.* As in *Garcia*, appellant's claims fail to hold water under the facts of this case because the police used the GPS device to crack this case by tracking appellant on the public roadways—which they could, of course, do in person any day of the week at any hour without obtaining a warrant. Therefore, we disagree with appellant's argument and find that Judge Posner's com-

ments about judicial restraint are also appropriate and applicable here, where the police also used a GPS device primarily to track a suspect on public streets. Consequently, we do not address the concerns raised by appellant regarding what may one day be potential future practices of the police, but instead address appellant's arguments regarding the actual actions of the police taken in the case before us.

### a. Subjective Expectation of Privacy

 Appellant claims that he manifested a subjective expectation of privacy with his "hunting" behavior, i.e., by driving around in the van looking for victims. While we believe that appellant wanted this behavior to remain undetected, this "hunting" behavior on the public streets did not indicate a subjective expectation of privacy. *See Class,* 475 U.S. at 114, 106 S.Ct. at 966.

The police tracked appellant as he drove a van that was emblazoned with his employer's logo, which helped advertise the company's name to people who observed the van going by them on the public streets. The van itself, therefore, suggested that people would observe its movements. Appellant did nothing to minimize the visibility of the logo or the van in general. In addition, nothing in this record suggests that appellant attempted to hide the movement of the van or "sneak" it down the road. He did nothing to prevent people from observing him as he drove on the public streets. In fact, the officers described his "hunting" behavior as driving slowly through the same areas, repeating a pattern—actually making it easier rather than harder for someone to observe the van's movements. This kind of behavior does not indicate that appellant actually attempted to prevent people from observing his actions. *Compare Katz v. United States,* 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (explaining that when an individual enters a phone booth, closes the door, and pays to make a call, the individual has evidenced an expectation that his conversation will not be heard by an "uninvited ear"). Appellant did not exhibit a subjective expectation of privacy while he was driving the work van down public streets.

### b. Societal Expectation of Privacy

 Appellant also claims that society recognizes as reasonable an expectation "not to be constantly tracked." However, the United States Supreme Court has held that society does not recognize such an expectation for vehicles *on public streets.* *Knotts,* 460 U.S. at 281, 103 S.Ct. at 1085 ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."); *Cardwell,* 417 U.S. at 590, 94 S.Ct. at 2469 ("A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view."); *see also Garcia,* 474 F.3d at 997 ("The substitute here [using GPS to track a suspect] is for an activity, namely following a car on a public street, that is unequivocally *not* a search within the meaning of the amendment."). Society recognizes a privacy right not to be tracked in one's home, but the home is a very different setting from a public street. *See Kyllo,* 533 U.S. at 33, 121 S.Ct. at 2043 ("While we upheld enhanced aerial photography of an industrial complex in *Dow Chemical,* we noted that we found 'it important that this is *not* an area immediately adjacent to a private home, where privacy expectations are most heightened,' 476 U.S. at 237, n. 4, 106 S.Ct. at 1826, n. 4 (emphasis in original)."); *Karo,* 468 U.S. at 715, 104 S.Ct. at 3303 (noting that, just as an officer cannot "surreptitiously" enter a home to determine if contraband is in the home, police cannot "surreptitiously employ[ ] an electronic device to obtain information that it could not have obtained by observation from outside the curtilage of the house"). As appellant's movements in his home were not tracked—only the movements of the work van were recorded—no recognized privacy right was violated when the police used the GPS device to track the van's movements on the public streets.

Appellant acknowledges the United States Supreme Court's holding in *Knotts* that "persons do not have a reasonable expectation of privacy in their movements on the public streets." However, he argues that technology has evolved since *Knotts* was decided, and, therefore, we should not con-

sider the United States Supreme Court's holding in that case as controlling here.

In *Knotts*, the police placed a beeper into a container that was then sold to Knotts and his co-defendants. 460 U.S. at 278, 103 S.Ct. at 1083–84. Unlike here, where the GPS system automatically tracked and recorded the movement of the van, the beeper technology discussed in *Knotts* required that the police follow the signal from the beeper as the container was moved. *Id.* We find that this advancement in tracking technology provides an insufficient basis for distinguishing *Knotts*. As the trial court found, the use of GPS tracking only enabled the police to "technologically supplement that information which the police could have obtained by their own sensory perception" if they had been physically following appellant—and physically following a van's movements on public streets (which is the key to the police's resolution of this case), without stopping or interfering with the van, is certainly constitutionally legitimate behavior for police officers.

The United States Supreme Court has acknowledged a difference between technology used as a substitute for legitimate police behavior and technology used as a substitute for police actions that violate the Fourth Amendment. *Karo*, 468 U.S. at 715, 104 S.Ct. at 3303. Based on the record in this case, the GPS technology used here did not provide a substitute for police behavior that would have otherwise violated a recognized right to privacy. Here, a police officer could have followed and personally recorded the movements of the van, and, as appellant concedes, such an investigation would not have violated any recognized right of privacy.[12] The Court in

---

12. The facts of this case are distinguishable from those recently considered in *United States v. Maynard*, No. 08–3034, —— F.3d ——, ——, 2010 WL 3063788, at *1, 7, 2010 U.S.App. LEXIS 16417, at *4, 20 (D.C.Cir. Aug. 6, 2010), which, of course, is not controlling precedent for this Court. In *Maynard*, the police tracked the movements of a co-defendant, Jones, 24 hours a day for four weeks using a GPS device they had installed on Jones's own Jeep without a warrant. *Maynard*, —— F.3d at —— – ——, 2010 WL 3063788, at *7–8, 2010 U.S.App.

*Knotts,* in fact, noted that "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." 460 U.S. at 282, 103 S.Ct. at 1086. The fact that the police used technology to follow the van's movements on public streets, therefore, did not somehow invade appellant's recognized privacy interests because the GPS did not act as a substitute for unconstitutional police action.[13]

---

LEXIS 16417, at *22. Reversing the denial of Jones's motion to suppress in that case, the United States Court of Appeals for the District of Columbia Circuit held that *"the whole* of a person's movements *over the course of a month* is not actually exposed to the public because the likelihood a stranger would observe all those movements is not just remote, it is essentially nil." *Maynard,* — F.3d at —, 2010 WL 3063788, at *12, 2010 U.S.App. LEXIS 16417, at *35 (emphasis added). In so holding, the Court reasoned that a reasonable person does not expect a "stranger to pick up the scent again the next day and the day after that, *week in and week out,* dogging his prey until he has identified *all the places, people, amusements, and chores* that make up that person's hitherto private routine." *Maynard,* — F.3d at —, 2010 WL 3063788, at *12, 2010 U.S.App. LEXIS 16417, at *35–36 (emphasis added). Here, the police used GPS technology affixed to the outside of appellant's work van (with its advertising of his employer's business on the van's sides and with his employer's restrictions on appellant's use of the van) to track appellant's movements *with that van* for at most six days. On these facts, the police were able to monitor only *portions* of appellant's daily movements for those six days—not *the whole* of his movements for nearly a month, which was the situation in *Maynard. See Maynard,* — F.3d at —, 2010 WL 3063788, at *13, 2010 U.S.App. LEXIS 16417, at *39 ("*The whole* of one's movements over the course of a month is not constructively exposed to the public because, like a rap sheet, that whole reveals far more than the individual movements it comprises." (emphasis added)). Thus, whereas in *Maynard* the police used GPS technology to track the whole of defendant Jones's movements in his own Jeep around the clock for nearly a month, the police here used GPS technology for less than a week to track appellant while he was driving a company van that had advertising intended to reach the public on it—and never used GPS technology to track appellant while appellant was driving his own vehicle.

13. A New York appellate court has held that warrantless tracking of a defendant with a GPS device for 65 days violated the State of New York's constitution, but that court acknowledged that the United States Constitution might not include this level of protection. *People v. Weaver,* 12 N.Y.3d 433, 882 N.Y.S.2d 357, 909 N.E.2d 1195, 1201–03

As the Supreme Court explained in *Smith v. Maryland*, 442 U.S. 735, 741, 99 S.Ct. 2577, 2580–81, 61 L.Ed.2d 220 (1979), the analysis here requires that a court determine if the "contents" of private behavior were invaded by the police. Here, the police tracked the movement of a van. The GPS did not give the police the ability to intercept appellant's conversations or to observe any private behavior inside the van. The van did not go into appellant's home. *See Cardwell*, 417 U.S. at 590, 94 S.Ct. at 2469 ("One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects."); *contrast United States v. Bailey*, 628 F.2d 938, 943–44 (6th Cir.1980) (finding Bailey's reasonable expectation of privacy was violated by the police using a beeper to track containers of chemicals being stored in various apartments). The GPS tracking simply "enabled the police to be more effective in detecting crime" because they could follow the van on the streets without losing it and without using limited police manpower. *Knotts*, 460 U.S. at 284, 103 S.Ct. at 1086. Improving "police efficiency" is certainly not unconstitutional as long as the underlying observation by the police was not unconstitutional. *Id.; see Garcia*, 474 F.3d at 998 (noting that the Fourth Amendment "cannot sensibly be read to mean that police shall be no more efficient in the twenty-first century than they were in the eighteenth"). As observing a person's work van on the public streets is not unconstitutional, the police's use of the GPS system to track appellant while he was in the van on the public streets likewise did not violate the Fourth Amendment.

## 2. Tracking at the Employer's Warehouse

■ Appellant argues that the GPS system tracked the van onto the private property of his employer, which he alleges violated the Fourth Amendment. Therefore, he con-

---

(2009). Here, the tracking with the GPS device was for at most six days.

tends, the trial court should have granted his motion to suppress.

The trial court specifically found that appellant had not proven "that by tracking him to the business, his place of business, that there was anything there that caused an invasion of his privacy." On appeal, appellant does not explain how the police violated *his own* privacy expectations by tracking his work van to *his employer's* warehouse. Therefore, appellant has not established a subjective expectation of his own privacy that was violated by the GPS tracking of his employer's van when it was parked at his employer's place of business.[14] *See Kyllo,* 533 U.S. at 33, 121 S.Ct. at 2042–43. Furthermore, it certainly appears, as the Commonwealth argues, that the GPS tracking of the work van while at the warehouse did not contribute in any way to the decision by the police to personally follow appellant on February 6, 2008.

Appellant cites several federal district court cases involving cell phones, which can and often are taken into private *homes* to support his position that the police cannot track individuals on private property. However, appellant does not argue that the police tracked his movements in his home, so those cases do not apply. The "potential" use of GPS tracking in other circumstances to follow individuals into truly private areas has no place in the analysis of this case. *Karo,* 468 U.S. at 712–13, 104 S.Ct. at 3301–02; *Dow Chemical Co.,* 476 U.S. at 239 n. 5, 106 S.Ct. at 1827 n. 5.

### III. Conclusion

We find the police did not violate the Fourth Amendment of the United States Constitution or Article 1, section 10, of the Virginia Constitution by installing a GPS device in the bumper of appellant's work van while it was parked on a public street or by tracking the van with the GPS system on the public

---

14. Employer did not in any way claim the tracking of its van onto the private property of its warehouse was improper, nor could appellant have objected on behalf of his employer even if employer had done so. Employer, of course, was not a party to this proceeding.

streets, especially given that, before installing the GPS device and tracking the van, the police had reasonable, articulable suspicion that appellant was involved in a series of sexual assaults.[15] Because we find that there is no search or seizure prohibited under the Fourth Amendment or under the Virginia Constitution, we do not need to further address appellant's argument that the evidence he seeks to suppress should have been excluded at trial as "fruit of the poisonous tree."

Based on the foregoing, we affirm the trial court's denial of appellant's motion to suppress and affirm appellant's conviction for abduction with intent to defile.

*Affirmed.*

FELTON, C.J., concurring.

I concur in that part of the majority opinion affirming the trial court's judgment denying appellant's motion to suppress the eyewitness testimony of the law enforcement officers who

---

**15.** During the suppression hearing, the Commonwealth asked the trial court to find that the evidence which appellant sought to suppress was not the "fruit" of a violation of his Fourth Amendment rights. *See Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (discussing the "fruit of the poisonous tree" doctrine for exclusion of evidence). However, the trial court instead explicitly based its denial of the motion to suppress on its finding that appellant's Fourth Amendment rights were not violated. In discussing the facts that supported this decision, the trial court did find that, after collecting the information from the GPS device and reviewing it, the police then decided to personally follow appellant, suggesting that they would not have followed him unless they had knowledge of his movements that the GPS tracking provided. On appeal, the Commonwealth has argued that there is simply no Fourth Amendment violation in this case. The Commonwealth has not really argued to this Court that, even if there were a Fourth Amendment violation by attaching and using the GPS device to track the van on the public streets, the testimony of the police who then followed appellant and observed his attack on the victim was, nevertheless, not "fruit of the poisonous tree." Indeed, the Commonwealth states on brief, "[T]he defendant's driving on public roads on the afternoon and evening of February 5, 2008, provided the impetus for the physical surveillance" by the police that resulted in their observing his attack on the victim. Therefore, although the concurring opinion would decide this case on the "fruit of the poisonous tree" doctrine, we believe the better ground on which to decide this case is the lack of a Fourth Amendment violation here.

saw appellant attack the victim.[16] The majority opinion affirms the trial court's ruling that the officers did not violate appellant's Fourth Amendment protections against unreasonable searches and seizures when they placed a GPS device in the bumper of appellant's employer's van, used by appellant in his job, while the van was parked on a public street, and used the data from that device to track and map appellant's movement. While I have no concerns with the analysis of the majority in its determination that the placement of the GPS on the van and the use of the GPS tracking information did not violate appellant's Fourth Amendment rights, it is my view that analysis is not the narrowest grounds on which to decide the issue before the Court on appeal: whether the officers' eyewitness testimony of the attack should be suppressed. "[A]n appellate court decides cases 'on the best and narrowest ground available.' " *Luginbyhl v. Commonwealth*, 48 Va.App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc) (quoting *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 531, 111 S.Ct. 913, 921–22, 112 L.Ed.2d 1125 (1991) (Stevens, J., concurring)).

Appellant was a registered sex offender who had recently been released from prison. At the time of appellant's attack on the victim, law enforcement officers were conducting a visual surveillance of appellant as he drove his personal car on public roadways. Based on information law enforcement officers had developed in investigating a series of unsolved sexual assaults in that region, they had begun to focus on appellant as a prime suspect in those unsolved crimes prior to placing the GPS device on appellant's employer's van.

Even assuming, without deciding, that the officers' placing a GPS device in the bumper of employer's van driven by appellant, while that vehicle was on a public street, somehow violated appellant's Fourth Amendment rights, the evidence

---

**16.** Appellant's petition for appeal to this Court contained eight questions presented. We granted only three questions presented, each of which related to whether the officers' use of the GPS tracking device violated appellant's Fourth Amendment protection against unreasonable searches and seizure requiring the trial court to exclude any direct or derivative evidence obtained by the use of that device.

appellant sought to suppress was the officers' eyewitness testimony of appellant attacking the victim. There is no dispute that the officers' eyewitness testimony, which appellant seeks to suppress as the "fruit of the poisonous tree" of the asserted violation of his Fourth Amendment rights,[17] was competent and relevant evidence proving appellant abducted the victim from the sidewalk to sexually assault her.

In *Warlick v. Commonwealth*, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974),[18] the Supreme Court provided three limitations to the exclusionary rule and the "fruit of the poisonous tree" doctrine: "(1) evidence attributed to an independent source; (2) evidence where the connection has become so attenuated as to dissipate the taint; and (3) evidence which inevitably would have been gained even without the unlawful action." The record on appeal clearly reflects that the officers had obtained evidence independently of that provided through the GPS device that appellant was a strong suspect in the recent unsolved sexual assaults in the region. The record shows that their focus on appellant as a prime suspect was based on a comparison of the *modus operandi* that led to his prior conviction to the *modus operandi* used by a perpetrator of the recent unsolved sexual assaults. The latter assaults occurred in the area where appellant lived and where he attended meetings required as part of his probation requirements following his release from prison. Based on that information, the officers determined that they would visually follow appellant's movement. On the day of the attack at issue here, they observed appellant driving his personal car, then park and leave it on a public street and walk in the

---

**17.** *See Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

**18.** *See Brown v. City of Danville*, 44 Va.App. 586, 600–02, 606 S.E.2d 523, 530–32 (2004) ("[I]f a person engages in new and distinct criminal acts in response to unlawful police conduct, the exclusionary rule does not apply, and evidence of the events constituting the new criminal activity, including testimony describing the defendant's own actions, is admissible.").

direction of a woman who was walking by herself on the public way. When the officers saw appellant sexually attack the woman, they intervened, rescued the victim, and arrested him for the sexual assault.

In my view, the record on appeal provides no basis to exclude the eyewitness testimony of the officers who witnessed appellant's sexual attack on the victim. The officers' eyewitness testimony, as well as that of the victim, was competent to prove that appellant was guilty of abduction with the intent to defile the victim. Accordingly, I would affirm appellant's conviction without addressing the GPS Fourth Amendment issue.