Present:  Kinser, C.J., Lemons, Goodwyn, and Millette, JJ., and
Carrico, Russell and Lacy, S.JJ.

DAVID L. FOLTZ, JR.,
s/k/a DAVID LEE FOLTZ, JR.

v.  Record No. 110832          OPINION BY SENIOR JUSTICE
                               ELIZABETH B. LACY
COMMONWEALTH OF VIRGINIA        September 14, 2012

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal we consider whether the admission of certain
eyewitness testimony constituted reversible error.

Background

Beginning in November 2007, Fairfax County police officers
investigated a series of sexual assaults that had similar
characteristics.  Fairfax County Police Detective Erik Stallings
obtained the identities of registered sex offenders who lived
and worked in the vicinity of the assaults.  David Lee Foltz,
Jr. was among the sex offenders identified.

In early January 2008, retired Fairfax County Police
Detective James Kraut heard about the assaults and contacted
Lieutenant Brenda Akre, supervisor of the Fairfax Police
Department sex crimes unit.  Kraut told Akre that the recent
assaults sounded "amazingly like" the modus operandi of an
individual he had investigated in 1990.  Kraut could not recall
the individual's name, but described the assaults and stated
that the person had been convicted and imprisoned in 1990.  Akre
conferred with another active duty senior detective about the

past assaults who told her the person Kraut had investigated was Foltz. Akre relayed this information to Stallings.

Stallings then reviewed Foltz' parole record, driving record and the department's investigative management system, which provided detailed information about Foltz' prior crimes that were similar to the assaults under investigation. The detective also requested an update from the sex offender registry on Foltz' employment status and his current schedule. This information revealed that Foltz was attending probation-related meetings in the vicinity of and at the times of the assaults under investigation. The information also showed that assaults had occurred in the vicinity of Foltz' work and home.

Stallings asked for and obtained approval from Akre for surveillance assistance by means of a global positioning system ("GPS") device. The police attached the GPS device to the bumper of Foltz' employer-owned work van on February 1, 2008, while the van was parked on a public street outside Foltz' house.

The police first accessed the data from the GPS device on February 5, 2008. That data showed that Foltz had been driving in and out of residential neighborhoods. Stallings requested assistance to conduct physical surveillance of Foltz, but assisting officers were not available. That evening, Stallings responded to a call reporting another assault similar to those

2

he was investigating. When the officers reviewed the GPS data later that night it showed that at the time of the February 5 assault the van Foltz was driving was "a block or two away" from the assault.

The police initiated physical surveillance of Foltz around 4:00 p.m. on the afternoon of February 6. The officers first observed Foltz as he left his house, driving his personal vehicle. After approximately three hours of surveillance, two of the officers saw Foltz get out of his vehicle and follow a woman walking down a sidewalk in the City of Falls Church. The officers followed Foltz and saw him grab the woman and quickly pull her under a large evergreen tree. The officers intervened to rescue the woman and, after a struggle, arrested Foltz. The Fairfax officers contacted the Falls Church Police Department, which then took custody of Foltz.

Foltz was indicted for violation of Code § 18.2-48, abduction with intent to defile, and Code § 18.2-67.5:3, commission of a subsequent violent sexual assault. Prior to trial, Foltz filed a motion to suppress the testimony of the officers regarding their surveillance of Foltz on the evening of the attack. Foltz argued that the police officers, without first obtaining a search warrant, unlawfully installed the GPS device on his vehicle and unlawfully tracked his movements through use of the device and, therefore, under Warlick v.

3

Commonwealth, 215 Va. 263, 208 S.E.2d 746 (1974), the officers' testimony was subject to the exclusionary rule because it was "fruit of the poisonous tree" of an unlawful search in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 10 of the Constitution of Virginia.

The trial court denied the motion, holding that the use of the GPS device did not violate the federal or state constitutions. The trial court limited the officers' testimony to the events they observed on the evening of the assault and the jury was instructed not to speculate about why the officers were following Foltz.

At trial, the officers testified that they observed Foltz driving his own vehicle and stopping in residential areas; that at one point he got out of the car and was seen walking behind a female pedestrian; that he drove on to the City of Falls Church and again exited the car at a Grand Mart store; and that he drove on and ultimately parked his car and followed another female pedestrian for approximately four-tenths of a mile. At that point, according to the officers, Foltz pulled a mask over his face, attacked the woman from behind, moved her off the sidewalk, threw her to the ground under a tree, put his hand over her mouth and prevented her from getting up. One officer testified that Foltz had his hands at the woman's waistline.

4

The officers also testified about their actions in stopping the attack and subduing Foltz.

The victim testified that while she was walking on the sidewalk she was grabbed from behind, dragged under a tree, and pinned to the ground. She testified that the attacker covered her mouth with one of his hands and with his other hand "tried to unbutton my pants." She struggled to "prevent him from doing it," bit the hand that was covering her mouth, and started screaming. When questioned further, the victim explained that Foltz' hand was "[b]elow [her] abdomen." At the court's direction, the victim stood and pointed to the area on her body which Foltz touched. The record reflects that the victim pointed to the exterior of her pants in the vaginal area. The victim also testified that she sustained scratches to her face and mouth in the attack.

Evidence of Foltz' prior rape conviction was presented to establish the elements of the charged violation of Code § 18.2-67.5:3, a subsequent sexually violent assault.

Foltz was convicted by a jury in the Circuit Court of Arlington County and sentenced to life imprisonment.

Foltz appealed to the Court of Appeals of Virginia contending, as relevant here, that the trial court erred by denying his motion to suppress the testimony of the police officers. In a published opinion, a panel of the Court of

5

Appeals affirmed Foltz' conviction, holding that the use of the GPS tracking device was not an unlawful search or seizure and therefore the officers' testimony was not subject to the exclusionary rule. Foltz v. Commonwealth, 57 Va. App. 68, 90-91, 698 S.E.2d 281, 292-93 (2010).

On rehearing en banc, the Court of Appeals affirmed the conviction but did not address the constitutionality of the use of the GPS tracking device, holding instead that the exclusionary rule would not bar the officers' testimony because the assault that the officers observed was a new and distinct offense from the previously committed crimes that the officers were investigating. Foltz v. Commonwealth, 58 Va. App. 107, 117-18, 706 S.E.2d 914, 919-20 (2011).[*] The Court of Appeals held the officers' observations of the attack on February 6 "were sufficiently attenuated from any argued taint arising from the placement and use of the GPS device to track the movements of [Foltz'] assigned work van" and the admission of the officers' testimony was not error. Id. at 118, 706 S.E.2d at 920. We granted Foltz an appeal.

---

[*] Consideration of arguments not made in the court below is appropriate under the doctrine of the right result for the wrong reason where additional factual matters are not necessary to resolve a newly-advanced rationale. Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010)(quoting Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010)).

6

In his petition for appeal filed in this Court, Foltz argued that the Court of Appeals erred in not declaring the placement and use of the GPS device unconstitutional and in holding that the officers' testimony was admissible. Subsequent to the filing of the appeal, the United States Supreme Court decided United States v. Jones, 565 U.S. ___, 132 S.Ct. 945 (2012), holding that the government's placement of a GPS tracking device on the bumper of a vehicle and its use of that device to monitor the vehicle's movements is a "classic trespassory search" which, in the absence of a valid search warrant, is a violation of the Fourth Amendment to the United States Constitution. Id. at ___, 132 S.Ct. at 949, 954. Applying Jones to this case means that the installation of the GPS device on Foltz' work van and the use of that device to gather information about Foltz' movements by the police, without a valid search warrant, constituted an unconstitutional search. The issue now before this Court is whether the admission of the officers' testimony was error.

Constitutional error, like other types of error, remains subject to analysis under the doctrine of harmless error. Crawford v. Commonwealth, 281 Va. 84, 100, 704 S.E.2d 107, 117 (2011). Therefore, if the officers' testimony was the "fruit of the poisonous tree," Wong Sun v. United States, 371 U.S. 471,

7

488 (1963), and its admission was error, the error may be harmless and the conviction sustained if the error was " 'harmless beyond a reasonable doubt.' " Crawford, 281 Va. at 101, 704 S.E.2d at 117 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). For the reasons that follow, assuming without deciding that the admission of the officers' testimony was error, we conclude the admission of that testimony was harmless beyond a reasonable doubt.

Conviction of the charges in violation of Code § 18.2-48 required proof beyond a reasonable doubt that Foltz, by force and without legal justification or excuse, transported the victim with the intent to deprive the victim of her personal liberty and with the intent to sexually molest her, Crawford, 281 Va. at 102-03, 704 S.E.2d at 118, and that this assault was subsequent to a previous conviction for a sexually violent assault, from which Foltz was at liberty, and that the previous conviction was not part of a common act, transaction or scheme with this offense. Code § 18.2-67.5:3. There was no dispute that Foltz assaulted the victim, that he had previously been convicted of rape, and that he was at liberty from that conviction at the time of the offense at issue here.

The victim testified unequivocally that she was attacked from behind by force, that she was dragged to a place off the sidewalk on which she had been walking, that she was deprived of

8

her liberty because she was pinned on the ground by her attacker, and that her attacker placed his hand on her pants in the area of her vagina. The Commonwealth, at trial and in oral argument in this Court, pointed to this testimony as proof that Foltz abducted the victim with intent to defile her.

There is nothing in the record to suggest that the victim was not a credible witness. Her testimony regarding the attack and Foltz' intent was clear and specific. She believed he was going to "do it." She testified and demonstrated that he was attempting to sexually molest her. The testimony of the officers regarding the assault was cumulative of the victim's own testimony. The officers' testimony regarding Foltz' conduct for the hours prior to the assault may have supported the theory that Foltz was stalking or following female pedestrians, but it did not extend to indicating the purpose of his stalking – whether to rob, assault, sexually molest, abduct or engage in some other activity. Based on this record, admission of the officers' testimony was harmless beyond a reasonable doubt.

Accordingly, for the reasons stated, we will affirm the judgment of the Court of Appeals.

Affirmed.